**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

SELENIA C. DENT                    :
                                   :
      Plaintiff,                 :
                                   :
v.                                 :          CASE NO.: 1:14-CV-141 (WLS)
                                   :
REGIONS BANK,                      :
                                   :
      Defendant.                 :
_____ :

## ORDER

    This action, originally filed in Dougherty County Superior Court on August 19, 2014, was removed to this Court on September 18, 2014.  Presently before the Court is Defendant Regions Bank's (Regions) Motion to Dismiss, filed on September 25, 2014.  (Doc. 6.)  Plaintiff Selenia Dent filed a Response on October 28, 2014 after the Clerk of Court granted her an extension of the deadline to file a response. (Doc. 9.)  Regions filed a Reply to Dent's Response on November 14, 2014. (Doc. 10.)  The Court now considers Regions' Motion to Dismiss. (Doc. 6.)

## FACTUAL ALLEGATIONS

    Plaintiff Selenia Dent alleges the following facts in her Complaint. (Doc. 1-3.)  On May 19, 2014, Dent and her spouse, Benjamin F. Dent, executed a security deed, creating a security interest in favor of Regions in Dent and her husband's principal dwelling, located at 2821 Moultrie Road, Albany, Georgia.  The security interest was created to guarantee a promissory note on which Benjamin Dent is listed as the sole borrower and on which Selenia Dent's name does not appear. (Doc. 6-3.)

    At the time the security deed was executed, Regions delivered to Dent two copies of a "notice of right to cancel," which Dent signed to acknowledge having received them.  On May 21, 2014, Dent signed the "notice of right to cancel," indicating that the she wished to cancel the transaction and delivered the signed notice to Regions the same day.  On June 9,

1

2014, Regions filed the security deed executed by Dent and her husband in the Dougherty County Superior Court Clerk's Office. The security deed was recorded by the Clerk.

Dent now asserts two claims against Regions: one for violation of 15 U.S.C. § 1635, the right of rescission provision of the Truth in Lending Act and one for breach of contract. As relief, Dent seeks the voiding and cancellation of the recorded security deed, actual damages, costs, and attorney's fees.

## **DISCUSSION**

## I.   **Motion to Dismiss Standard**

Regions moves to dismiss Dent's claim based on Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  A Motion to Dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'"  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)).  "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"  *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw [p]laintiff's inference.'"  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), (abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012)).  The Supreme Court instructs that in considering a Motion to Dismiss "a court must accept as true all of the allegations contained in a complaint;" this principle, however, "is inapplicable

to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

## ANALYSIS

### I. Dent's Federal Truth in Lending Act (TILA) Claim

Regions moves to dismiss Dent's TILA claim on the basis that she has no standing under the statute to bring the claim. (Doc. 6-1 at 6.) The TILA right of rescission provision at issue in this Motion to Dismiss provides in pertinent part:

> [I]n the case of any consumer credit transaction . . . in which a security inter-est, including any such interest arising by operation of law, is or will be re-tained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the *obligor* shall have the right to re-scind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and re-scission forms required under this section . . . The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obli-gor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a) (emphasis added). Regions' primary argument in favor of dismissing Dent's TILA claim is that she is not an "obligor" and is therefore not entitled to rescission under this provision. TILA does not define the term "obligor." *See* 15 U.S.C. §§ 1602, 1635.

Initially, the Court rejects Dent's argument that the Notice of Right to Rescind provided by Regions conferred upon her a right to rescind under TILA. A private party cannot con-vey a statutory right upon a person who does not fall into the class of people intended by Congress to hold that right. Here, if Dent does not fall into the class of "obligors" intended by Congress to receive a right to rescission under 15 U.S.C. § 1635, then Regions cannot by itself confer that right upon Dent by issuing a notice. Regions is not estopped from chal-lenging the regulation under *Chevron* simply because it has complied with the regulation, and Regions cannot confer upon Dent a right that is not granted by the statute simply by giving Dent a paper notice.

Dent's primary argument that she is entitled to rescission rests on the language in the Federal Reserve Board regulation implementing TILA, 12 C.F.R. § 226.15, known as "Regu-

lation Z." Regulation Z provides in pertinent part, "[I]n a credit plan in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each *consumer* whose ownership interest is or will be subject to the security interest shall have the right to rescind . . . ." 12 C.F.R. § 226.15(a)(1)(i) (emphasis added). The regulation uses the term "consumer" instead of the term "obligor." TILA itself does not define the term "consumer" as it is used as a noun. *See* 15 U.S.C. § 1602 (defining "consumer" only as it is used as an adjective). However, 12 C.F.R. § 226.2, the definitions section of Regulation Z, defines "consumer" as:

> a cardholder or natural person to whom consumer credit is offered or extended. However, for purposes of rescission under §§ 226.15 and 226.23, the term also includes a natural person in whose principal dwelling a security interest is or will be retained or acquired, if that person's ownership interest in the dwelling is or will be subject to the security interest.

In short, Dent argues that 12 C.F.R. § 226.15 gives her a right to rescission because she falls into the regulatory definition of "consumer," and Regions argues that 12 C.F.R. § 226.15 is not entitled to deference because it violates the Congress' intent for 15 U.S.C. § 1635(a). The Court notes that neither the Eleventh Circuit nor any of its sister circuits have taken up this precise issue yet, so "the great weight of authority" Regions cites in support of its argument is, at best, persuasive. (Doc. 6-1 at 14.)

In *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, the United States Supreme Court set forth a two-step analysis to be used in determining whether an agency regulation is entitled to deference. 467 U.S. 837, 842-43 (1984). The first step requires a court to determine whether Congress has directly spoken to the precise question as issue. "If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. If a court determines that the intent of Congress is not clear because "the statute is silent or ambiguous with respect to the specific question," then the court should proceed to the second step of the analysis, which requires determining whether the agency's interpretation of the statute is permissible and not arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 843-44. At all times throughout the *Chevron* analysis, a court must remember that agency interpretations are

entitled to great deference and that a court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844. In this particular context, the Court notes that because TILA is a remedial statute, it should be construed liberally in favor of consumers and that the U.S. Supreme Court has held specifically that the Federal Reserve Board, the agency empowered to promulgate regulations under TILA, is entitled to great deference with regard to its interpretations of the Act. *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3d Cir. 1990); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 557-59 (1980).

The Court first considers whether Congress unambiguously expressed to whom it intended to grant a right of rescission to under 15 U.S.C. § 1635(a) through its use of the term "obligor." The Court finds, for several reasons, that Congress' intent was not clearly expressed. First, TILA does not define the term "obligor." *See* 15 U.S.C. §§ 1602, 1635. Additionally, the plain meaning of the term "obligor" does not clearly exclude or include individuals who are not obligated to repay a loan. Black's Law Dictionary defines "obligor" as "[o]ne who has undertaken an obligation; a promisor or debtor." Black's Law Dictionary 1181 (9th ed. 2009). Regions argues that the plain meaning of the term "obligor" does not include someone, such as Dent, who is *not* obligated to repay a debt. (Doc. 6-1 at 12.) However, Dent has undertaken an obligation –she obligated her property as security for her husband's loan, and if that loan should not be repaid, Dent could be obligated to forfeit her property.

The Court notes that throughout TILA and Title 15 in general, Congress used the term "obligor" to refer solely to borrowers and not to individuals who are not parties to a consumer credit transaction or consumer lease. *See, e.g.,* 15 U.S.C. §§ 1631(a), 1637, 1640, 1666a(a). However, the possibility that Congress simply did not contemplate or explicitly speak to scenarios in which an individual would pledge her property as security for someone else's loan does not mean that Congress clearly expressed its intent as to whether those individuals could and should be protected under TILA. *Chevron*, 467 U.S. at 843 ("Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."). Here,

Congress was ambiguous, if not silent, regarding the scope of the meaning of "obligor," so the Court must proceed to the second step of *Chevron* analysis.

The Court therefore considers whether the Federal Reserve Board's regulation is entitled to deference or whether the regulation is arbitrary, capricious, or manifestly contrary to the statute. As the Court has already noted, the plain meaning of the term "obligor" could reasonably be interpreted to include someone who obligates her property to secure another person's loan. Indeed, the Federal Reserve Board has indicated in at least one request for comments on proposed changes to Regulation Z that it believes this understanding of the term "obligor" is not only reasonable but also in line with the Congressional intent underlying TILA.

> A guarantor who personally guarantees and offers his home as security for a rescindable consumer credit transaction should have the right to rescind because the guarantor is in a situation very similar to that of the borrower. Both the borrower and the guarantor are obligors who are liable on the promissory note, a security interest is taken in both the borrower's and the guarantor's principal dwelling, and the consumer credit transaction is not exempt from rescission.

75 Fed. Reg. 58539, 58553 (Sept. 24, 2010). The Court finds that Federal Reserve Board's interpretation is reasonable considering that the alternative would place individuals like Dent in a position of incurring some of the burdens of consumer credit transactions –here, the pledge of her principal dwelling –without any of the protections afforded to the individuals who receive all of the benefits of those transactions.

The Court further finds that extending the right of rescission to individuals in Dent's position is not manifestly contrary to the purpose or language of the statute and, in fact, furthers the purpose of the statute. Congress' stated intent in promulgating TILA does not clearly exclude non-borrowers from TILA's protective umbrella. In § 102 of TILA as it was originally enacted, Congress stated its intent in promulgating the statute as follows:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title to assure a meaning-

ful disclosure of credit terms so that the consumer will be able to compare
more readily the various credit terms available to him and avoid the unin-
formed use of credit.

Pub. L. 90-321, 82 Stat. 146, 146 (1968).  The Second Circuit held that Congress' intent in drafting 15 U.S.C. § 1635 was to "establish a national policy of protecting consumers whose residences may be jeopardized by operation of all types of security interests acquired by creditors in the home improvement industry, and the goal was to provide uniform protection throughout the nation, irrespective of vagaries among states' lien laws." *N.C. Freed Co., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1216 (2d Cir. 1973).  The Court finds that Congress intended to increase openness and communication between creditors and consumers and to ensure that consumers were better informed about the risks and responsibilities associated with the credit options available to them.  Protecting individuals such as Dent is in line with this purpose.  The Court finds, therefore, that the Federal Reserve Board's interpretation of 15 U.S.C. § 1635(a) is entitled to deference and that Dent has standing to assert a TILA right of rescission claim under 15 U.S.C. § 1635(a). The Court further finds that Dent has asserted a "plausible entitlement to relief" under TILA.

Regions argues that even if Dent has standing to assert a claim under TILA, Dent has not pleaded that she is able to provide the loan proceeds upon rescission, a requirement for asserting a claim for rescission. (Doc. 6-1 at 15.) Regions argues that it would be inequitable for the Court to allow Dent's rescission claim to continue, much less to order rescission, without confirming that Dent is able to repay the loan amount to Regions.

Indeed, courts have held that rescission, even if statutorily granted, is at its core an equitable remedy and that it should not be ordered if it would result in a fundamental injustice to one of the parties. *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1030-31 (9th Cir. 2014); *Etta v. Seaboard Enter., Inc.*, 674 F.2d 913, 919 (D.C. Cir. 1982); *Brown v. Nat'l Permanent Fed. Savings & Loan Ass'n*, 683 F.2d 444, 447 (D.C. Cir. 1982); *Power v. Sims & Levin*, 542 F.2d 1216, 1221-22 (4th Cir. 1976); *Falkiner v. OneWest Bank*, 780 F.Supp.2d 460, 464 (E.D. Va. 2011); *Hennington v. Bank of America*, 2010 WL 5860296 at *9 (N.D. Ga. 2010).  And at least one court has granted a motion to dismiss for failure to state claim on equitable grounds

where a plaintiff sought to rescind a loan agreement in which a security interest was taken in the plaintiff's property but the plaintiff was not the recipient of the loan and did not plead an ability or intention to repay the unpaid loan. *Falkiner*, 780 F.Supp.2d at 464. In that case the district court held, "Plaintiff seeks to deprive [the creditor] of its legal due—repayment of the Note either through cash payments or foreclosure on the property used to secure the Note." *Id.*

12 C.F.R. § 226.15(c) provides, "[N]o money shall be disbursed other than in escrow, no services shall be performed, and no materials delivered until after the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded." Based on the facts alleged, the Court cannot determine whether Regions complied with this regulation. The Court cannot make a finding at this time that rescission would be an inequitable remedy where it may have been the case that Dent exercised her right to rescission exactly as the statute and regulation allow her to but Regions either ignored or overlooked her notice of rescission and/or released the loan money to Benjamin Dent before the three-day rescission time period had lapsed. Therefore, taking the facts as alleged as true, the Court finds that Dent has stated a plausible claim to relief under TILA.

Based on the foregoing, the Court finds that Dent has standing to assert a TILA claim and has stated a claim for relief. Regions' Motion to Dismiss Dent's TILA claim (Doc. 6) is **DENIED**.

## II. Dent's State Law Contract Claim

In her Complaint, Dent also asserts a Georgia state law breach of contract claim against Regions. (Doc. 1-3 at 3.) Regions moves to dismiss this claim on the ground that Dent does not have standing to assert such a claim because she was not a party to a contract with Regions. (Doc. 6-1 at 16.) Dent argues that the security deed, to which she is a party, is, itself a contract with Regions. (Doc. 9 at 8.) The Court agrees. The Court of Appeals in Georgia has held, "It is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." *Kennedy v. Gwinnet Commercial Bank*, 155 Ga. App. 327, 328 (Ga. App. Ct. 1980). Here, Dent is a party to a security deed that grants a security interest with power of sale to Regions. (Doc. 6-2.)

Dent is, thus, a party to a contract with Regions and has standing to assert a breach of contract claim.

In its Reply brief, Regions for the first time argues that, even if there is a contract between Dent and Regions, that contract does not include a right to rescission because the Security Deed makes no mention of such a right and does not formally incorporate the terms of the Notice of Right to Cancel. (Doc. 10 at 13-14.)  Dent alleges that she was provided a "Notice of Right to Cancel" at the time she executed the security deed. (Doc. 1-3 at 1.) The security deed (Doc. 6-2) does not reference the notice of right to cancel (Doc. 9-1).

In *Baker v. Jellibeans, Inc.*, the Supreme Court of Georgia held that contemporaneous writings should be considered in interpreting a contract even if one of the writings purports to contain "the entire understanding of the parties hereto with respect to the transactions contemplated hereby" and even if the writings are not cross-referenced. 252 Ga. 458, 459 (1984).  In *Harris v. Distinctive Builders, Inc*, the Georgia Court of Appeals considered a purchase agreement that appeared to be "complete in and of itself," but determined that it "must look at all contemporaneous writings to determine the parties' intent." 249 Ga. App. 686, 688 (Ga. App. Ct. 2001).  Dent alleges that there was a writing executed contemporaneously with the security deed that purported to advise her of a right to rescind that was then not honored by Regions. The Court finds, therefore, that Dent has stated a claim upon which relief can be granted.  Regions' Motion to Dismiss Dent's state law contract claim (Doc. 6) is therefore **DENIED**.

**SO ORDERED**, this 23rd of January, 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**